UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AIMEE JOANNE CARSTENS, | CASE NO. 1:17CV2685 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff Aimee Joanne Carstens ("Plaintiff") requests judicial review of the decision of the Commissioner of Social Security Administration ("Defendant") denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on May 18, 2018, Plaintiff asserts that the administrative law judge ("ALJ") issued a decision that: (1) was not supported by substantial evidence; and (2) failed to include all of her functional limitations in the residual functional capacity ("RFC") finding. ECF Dkt. #14. Defendant filed a response brief on July 18, 2018. ECF Dkt. #16. Plaintiff filed a reply brief on August 1, 2018. ECF Dkt. #17.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

# I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed an application for SSI alleging a disability onset date of January 2, 2014. ECF Dkt. #11 ("Tr.") at 205.[2] The application was denied initially and upon reconsideration. *Id.* at 135, 143. Plaintiff then requested a hearing before an ALJ, which was held on September

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

15, 2016. *Id.* at 103. On December 6, 2016, the ALJ issued a decision concluding that Plaintiff was not disabled. *Id.* at 85. Subsequently, the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Accordingly, the decision issued by the ALJ on December 6, 2016, stands as the final decision.

The instant suit was filed by Plaintiff on December 24, 2017. ECF Dkt. #1. Plaintiff filed a brief on the merits on May 18, 2018. ECF Dkt. #14. Defendant filed a response brief on July 18, 2018. ECF Dkt. #16. On August 1, 2018, Plaintiff filed a reply brief. ECF Dkt. #17.

## II.     RELEVANT PORTIONS OF THE ALJ'S DECISION

On December 6, 2016, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 85. The ALJ stated that Plaintiff had not engaged in substantial gainful activity since March 13, 2015, the date of application for SSI. *Id.* at 90. Continuing, the ALJ stated that Plaintiff had the following severe impairments: fibromyalgia; peripheral neuropathy; obesity; postural orthostatic tachycardia syndrome; and neuralgia. *Id.* The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 92.

After consideration of the record, the ALJ found that Plaintiff had the RFC to perform the following: occasionally lift and carry ten pounds and frequently lift and carry five pounds; stand and walk for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; unlimited pushing and pulling with the same limitations as lifting and carrying; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; and require the use of a walker or quad-cane for ambulation. Tr. at 92.

The ALJ then stated that Plaintiff was unable to perform any past relevant work. *Id.* at 95. Continuing, the ALJ indicated that Plaintiff was a younger individual age eighteen to forty-four on the date the application was filed, but subsequently changed to a younger individual age forty-five to forty-nine. *Id.* at 96. The ALJ noted that Plaintiff had at least a high school education and was able to communicate in English. *Id.* Next, the ALJ determined that the transferability of job skills was not material to the determination of disability because the

Medical-Vocational Rules supported finding that Plaintiff was not disabled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, that ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For these reasons, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since March 13, 2015, the date her application for SSI was filed.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g).

Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## V.   LAW AND ANALYSIS

### A.   Substantial Evidence

Plaintiff first claims that the ALJ's decision is not supported by substantial evidence because of the finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the objective evidence and other evidence of record. ECF Dkt. #14 at 13. Specifically, Plaintiff states that the ALJ applied the wrong standard for evaluating her fibromyalgia and pudendal neuralgia. *Id.* at 14. Continuing, Plaintiff claims that the ALJ never applied Social Security Ruling ("SSR") 12-2p, the applicable SSR for fibromyalgia, and instead repeatedly stated that the objective evidence did not support Plaintiff's allegations of disability. *Id.* Plaintiff states, "unlike other medical conditions, fibromyalgia is not amenable to objective diagnosis and standard critical tests are 'not highly relevant' in diagnosing or assessing fibromyalgia or its severity." *Id.* (citing *Preston*

*v. Sec'y of H.H.S.*, 854 F.2d 815, 820 (6th Cir. 1988); *Rogers*, 486 F.3d at 243-44). Next, Plaintiff states that by looking for objective evidence from MRIs or clinical testing, the ALJ "required more than fibromyalgia was capable of providing." *Id.* at 15. Plaintiff claims that "SSR 12-2p recognizes that symptoms of fibromyalgia cannot always be measured objectively through clinical or laboratory diagnostic techniques." *Id.* Additionally, Plaintiff asserts that the ambiguity in the ALJ's decision makes it unclear if her pudendal neuralgia was considered. *Id.* at 15.

Defendant contends that substantial evidence supports the ALJ's evaluation of Plaintiff's impairments, subjective symptoms, and alleged limitations. ECF Dkt. #16 at 17. Contrary to Plaintiff's position, Defendant states that the ALJ considered SSR 12-2p and acknowledged that she was diagnosed with fibromyalgia. *Id.* Defendant then notes that "a diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to benefits." *Id.* (citing *Stankoski v. Astrue*, 532 F. App'x 614 (6th Cir. 2013); *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008)). Regarding the ALJ's RFC finding, Defendant states that the ALJ considered all of Plaintiff's allegations of constant severe pain and disabling limitations, but found that the objective evidence did not support the degree of the alleged limitations. *Id.* at 18. Defendant then summarizes the medical evidence cited in the ALJ's decision. *Id.* at 19-20. Insofar as Plaintiff claims the ALJ did not evaluate her pudendal neuralgia, Defendant states that there was no requirement that the ALJ evaluate each diagnosis as a separate and distinct impairment in the written decision and that the regulations state that the ALJ should have considered the combined impact of all of Plaintiff's impairments. *Id.* at 20 (citing 20 C.F.R. § 416.923).

Plaintiff's argument is without merit. Citing SSR 12-2p, Plaintiff claims that the rules and regulations recognize "that symptoms of fibromyalgia cannot always be measured objectively through clinical or laboratory findings." ECF Dkt. #14 at 15. A review of SSR 12-2p does not fully support Plaintiff's interpretation. SSR 12-2p reads, in part:

> Introduction
>
> When a person seeks disability benefits due in whole or in part to [fibromyalgia], we must properly consider the person's symptoms when we decide whether the person has an [medically determinable impairment] of [fibromyalgia]. As with any claim for disability benefits, before we find that a person with an [medically determinable impairment] of [fibromyalgia] is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity . . .
>
> III.   What documentation do we need?
>
>   A.   General.
>
>   1. As in all claims for disability benefits, we need objective medical evidence to establish the presence of an [medically determinable impairment]. When a person alleges , longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment. In cases involving [fibromyalgia], as in any case, we will make every reasonable effort to obtain all available, relevant evidence to ensure appropriate and thorough evaluation.

Accordingly, while SSR 12-2p does recognize that fibromyalgia is a complex medical condition, it specifically states that a claimant must provide objective medical evidence in support of their allegations of disability due to fibromyalgia.

Plaintiff essentially argues that the ALJ improperly required objective medical evidence to support her disability claim and instead should have relied on her subjective statements. While the undersigned understands that fibromyalgia has been recognized as presenting unique evidentiary difficulties, it remains Plaintiff's burden to show that she is disabled. *Moon*, 923 F.2d at 1181. Here, Plaintiff does not cite to any objective medical evidence or opinion evidence supporting the severity of her alleged limitations. In contrast, the ALJ cited to medical evidence supporting the conclusion that Plaintiff was not as impaired as alleged.

The ALJ stated that treatment notes from July 2014 show that although Plaintiff reported "pain all over" her physical examination was essentially normal. Tr. at 93. Continuing, the ALJ noted that a MRI of Plaintiff's lumbar spine demonstrated minimal disc bulge at the L4-L5 level with mild facet arthrosis at the L5-S1 level. *Id.* The ALJ then indicated that imaging of

Plaintiff's cervical spine showed disc bulges at the C5-C6 and C6-C7 levels with no canal foraminal stenosis. *Id.* Next, the ALJ states that although straight-leg raises were positive on the left, Plaintiff's strength was generally intact. *Id.* The ALJ also indicated that while Plaintiff exhibited some mild tenderness of the lumbar spine and painful straight-leg raises on the left, her strength, sensation, and reflexes were all within normal limits bilaterally. *Id.* Moreover, the ALJ stated:

> Notably, the record does not contain any opinions from [a] treating or examining physician indicating that [Plaintiff] is disabled or even has limitations greater than those determined in this decision. Given [Plaintiff's] allegations of total disabling symptoms, one might expect to see some indication in the treatment records of restrictions place[d] on [Plaintiff] by treating sources. Yet a review of the record in this case reveals no restriction recommended by the treating providers.

*Id.* at 94.

Plaintiff cites no objective medical evidence and no opinion evidence in support of her claims of disability. The ALJ cited objective medical evidence in support of the decision and noted the lack of any opinion evidence supporting Plaintiff's allegations of disabling impairments. Further, although Plaintiff claims that it is unclear whether the ALJ considered her pudendal neuralgia, the ALJ included pudendal neuralgia when listing the conditions that Plaintiff originally claimed to be disabling and Defendant correctly states that the ALJ was not required to address each condition separately. ECF Dkt. #14; Tr. at 93. Accordingly, Plaintiff has failed to show that the ALJ's decision is not supported by substantial evidence.

### B.  **RFC Finding**

Next, Plaintiff claims that the ALJ failed to include all of the functional limitations arising from her severe and non-severe impairments. ECF Dkt. #14 at 17. Plaintiff claims that the RFC finding did not address her handling and fingering limitations or her incontinence. *Id.* at 17-18. Defendant contends that the ALJ properly accounted for Plaintiff's handling and fingering limitations by limiting her lifting and carrying. ECF Dkt. #16 at 21. Further, Defendant states that the ALJ considered Plaintiff's statement that she needed to use the restroom four to five times per hour for up to ten minutes each time and found those statements inconsistent with the record as a whole. *Id.* at 21-22.

Plaintiff's argument fails. Again, Plaintiff does not cite any medical or opinion evidence supporting her claims regarding her handling and fingering or her incontinence and relies on her own testimony. ECF Dkt. #14 at 17-18. The ALJ cited medical records showing essentially normal physical examinations, intact fine motor skills, and normal EMG studies of Plaintiff's upper extremities. Tr. at 93-94. As for her incontinence, Plaintiff fails to explain why the ALJ was required to consider this alleged impairment. Plaintiff cites no medical evidence in support of the claimed severity of her incontinence and the medical evidence of record does not support her claim that she needed to use the restroom four to five times per hour. *See* Tr. at 382-83, 392-93, 399, 416, 498, 510, 514, 535, 577, 593, 603, 618, 660. Additionally, as stated above, the ALJ noted that no treating providers opined that Plaintiff was disabled. *Id.* at 94. Accordingly, the ALJ's RFC finding accounted for Plaintiff's credible functional limitations and Plaintiff's argument is without merit.

## **VI.** **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

Date: January 29, 2019              */s/George J. Limbert*
                                                  GEORGE J. LIMBERT
                                                  UNITED STATES MAGISTRATE JUDGE